UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MARILYN T. FOX,

    Plaintiff,

vs.                                           Case No. 3:05-cv-148-J-MCR

JO ANNE B. BARNHART, Commissioner of
the Social Security Administration,

    Defendant.
_____/

**MEMORANDUM OPINION AND ORDER[1]**

This cause is before the Court on Plaintiff's appeal of an administrative decision denying his application for Social Security benefits. The Court has reviewed the record, the briefs and the applicable law. For the reasons set forth herein, the Commissioner's decision is **REVERSED** and the matter **REMANDED**.

**I.**     **PROCEDURAL HISTORY**

Plaintiff protectively filed an application for disability insurance benefits ("DIB") on April 17, 2001, alleging an inability to work since October 21, 1999. (Tr. 55-64). The Social Security Administration ("SSA") initially and on reconsideration denied this application. (Tr. 31-32, 34-35). Plaintiff then requested a hearing before an Administrative Law Judge (the "ALJ") on October 22, 2001. (Tr. 36). The plaintiff received a hearing before an Administrative Law Judge (the "ALJ") on April 2, 2003. (Tr. 37, 370). On May 12, 2003, the ALJ issued a decision finding Plaintiff not disabled. (Tr. 13-24). On July 8, 2005, Plaintiff

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 13).

1

filed a Request for Review by the Appeals Council. (Tr. 12). The Appeals Council denied Plaintiff's request for review on December 10, 2004. (Tr. 4-8). Accordingly, the ALJ's decision was the final decision of the Commissioner. Id. Plaintiff timely filed his Complaint in the U.S. District Court on February 11, 2005. (Doc. 1).

## II.   NATURE OF DISABILITY CLAIM

### A.   Basis of Claimed Disability

Plaintiff claims to be disabled since October 21, 1999, due to conditions resulting in the replacement of Plaintiff's hip and both knees. (Tr. 56). Plaintiff later introduced evidence of additional problems including Restless Leg Syndrome, frequent urination, foot numbness and back conditions. (Tr. 76, 98, 323, 326).

### B.   Summary of Evidence Before the ALJ

On the date the ALJ's decision was issued, Plaintiff was sixty years of age. (Tr. 17, 24, 376). Plaintiff completed a high school education and her Bachelor of Arts degree. (Tr. 376A). Plaintiff had past relevant work as a case manager, supported housing specialist, child placement specialist, and orders processing specialist. (Tr. 57, 82-86, 376A, 396-98). Plaintiff claims an onset date of October 21, 1999, due to a "left hip dislocat[ion] resulting in [a] replacement of hip and both knees." (Tr. 56). Plaintiff's medical history is summarized in the ALJ's decision. By way of summary, Plaintiff was born with a hip defect. (Tr. 383). At age one, procedures were performed on Plaintiff's hip. (Tr. 102). In 1987, Plaintiff underwent a total hip replacement. (Tr. 129, 140, 382).

In 1992, Plaintiff underwent orthoscopic surgery on her right knee. (Tr. 140). Dr. Grimsley, performed a left knee replacement on Plaintiff in 1999, following a previous

surgery on Plaintiff's left knee in 1995.  (Tr.  129, 102).  On February 15, 2000, Dr. Grimsley performed a right knee replacement on Plaintiff.  (Tr.  143).  Plaintiff's post-operative surgical pathology report noted "[s]evere degenerative arthritis."  (Tr.  145).

On June 7, 2001, Plaintiff visited Dr. Heekin with complaints of lower back pain.  (Tr. 277).  The record indicates Dr. Heekin ordered a series of x-rays of Plaintiff's lower back, which showed Plaintiff suffered from Grade II-III spondylolisthesis at the L5-S1 level.  (Tr. 276).  On August 16, 2001, MRIs of Plaintiff's spine were taken.  (Tr.  273).  Plaintiff was referred to Dr. Faillace, who determined Plaintiff suffered from Grade I spondylolisthesis at L4-5 and Grade II spondylolisthesis at L5-S1.  (Tr.  327).  Dr. Faillace, recommended a posterior lumbar decompression of L3-5 with pedicle screw fusion of L3-S1.  Id.  On December 14, 2001, Plaintiff sought the advice of Dr. Nguyen, who recommended a fusion of Plaintiff's spine at L4-S1.  (Tr.  325).

The record indicated Plaintiff also suffers from Restless Leg Syndrome ("RLS") and bladder incontinence.  (Tr.  215, 217, 234, 237 323, 387).  Additionally, the record establishes Plaintiff's pertinent medications are Celebrex for knee and back pain and Sinment for her RLS.  (Tr.  102, 237).

### C. Summary of the ALJ's Decision

A plaintiff is entitled to disability benefits when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months.  42 U.S.C. §§ 416(I), 423(d)(1)(A); 20 C.F.R. § 404.1505.  The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§ 404.1520, 416.920. First, if a plaintiff is working at a substantial gainful activity, she is not disabled.  29 C.F.R. §

404.1520(b).  Second, if a plaintiff does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a plaintiff's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a plaintiff's impairments do not prevent her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a plaintiff's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.  20 C.F.R. § 404.1520(f).  The plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In the present case, the ALJ determined Plaintiff met the nondisability requirements of the Social Security Act and was insured at least through the date of the ALJ's decision.  (Tr.  17).  At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset date, October 21, 1999.  (Tr.  18).  At step two, the ALJ held Plaintiff's left hip abnormality, post hip, left and right knee replacement status, spondylolisthesis, and lumbar spine impairments were severe.  (Tr.  20).  At step three, the ALJ determined Plaintiff did not have an impairment, or any combination thereof, which met or equaled any of the impairments listed in Appendix 1, Subpart P of the Regulation No. 4. Id.

The ALJ further determined Plaintiff retained the maximum residual functional capacity to:

> occasionally lift and/or carry 10 pounds, frequently lift and/or carry less than 10

> pounds, sit for approximately 6 hours of an 8-hour workday and walk and stand no more than 2 hours of an 8-hour workday. This includes flexibility in the ability to sit and stand. The claimant can occasionally climb, balance, stoop, kneel, crouch, and crawl. The claimant retains the mental residual functional capacity for skilled work.

(Tr. 22). In making this determination, the ALJ found Plaintiff's allegations concerning her pain limitations and their resulting impact on her ability to work "not fully credible." (Tr. 21). At step four, the ALJ utilized the testimony of a vocational expert ("VE") to determine if Plaintiff could perform any of her past relevant work. (Tr. 22). The VE testified Plaintiff's prior jobs as a caseworker (DOT #195.107-010) and caseworker, adult (DOT #195.107-022) were listed as sedentary skilled work. The VE further determined Plaintiff's prior work as a caseworker, child welfare (DOT #195.107-014) was listed as light skilled work. Id. Although the DOT classified Plaintiff's caseworker and caseworker, adult jobs as sedentary, the VE testified the jobs were generally performed at a light exertional level because of the amount of movement involved. Id. The VE also testified Plaintiff performed her caseworker and caseworker, adult jobs at a light exertional level. Id. Despite the VE's assertions that Plaintiff's work required a light exertional level, the ALJ found Plaintiff was capable of performing sedentary work and able to perform her past relevant work as a caseworker and caseworker, adult as listed by the DOT. Id. Accordingly, the ALJ denied Plaintiff's claim at step four.

### III.   STANDARDS OF LAW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971). The Commissioner's findings of fact are conclusive if

supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (a court must scrutinize the entire record to determine reasonableness of factual findings).

**IV.   ANALYSIS**

Plaintiff raises numerous issues on appeal. Plaintiff believes the ALJ erred by failing to resolve an apparent conflict between the VE's testimony and the DOT's standards, incorrectly dismissing Plaintiff's claims of pain, failing to correctly assess Plaintiff's RFC, posing an inadequate hypothetical, and failing to consider Plaintiff's combined impairments. (Doc. 21).

The Commissioner responds there was no conflict between the VE's testimony and the DOT's standards for the ALJ to resolve. Additionally, the Commissioner contends the ALJ properly addressed all complaints of pain, correctly evaluated Plaintiff's RFC, posed a

complete hypothetical, and considered Plaintiff's combined impairments or in the alternative Plaintiff waived the combined impairment issue by failing to articulate an argument. (Doc. 27).

**A. Whether the ALJ erred by failing to resolve a conflict between the VE's testimony and the DOT's standards?**

Social Security Ruling 00-4p places an affirmative duty on any ALJ utilizing a VE at step four or step five of a Plaintiff's claim of disability to "inquire, on the record, as to whether or not there is [a conflict]" between the VE's testimony and the DOT's standards. Social Security Ruling ("SSR") 00-4p. SSR 00-4p further states the ALJ must "elicit a reasonable explanation for [any] apparent conflict before relying on the VE" to support a determination of disability. Id. Finally, SSR 00-4p, states "[a] VE ... may be able to provide more specific information about jobs or occupations than the DOT." Id.

The Eleventh Circuit has made no findings or interpretations on SSR 00-4p, but other courts have determined that the ALJ must elicit a reasonable explanation for the conflict before relying on the VE's testimony. See Lellhame v. Barnhart, 128 Fed.Appx. 618, 619 (9th Cir. 2005) (remanding for further proceedings where ALJ failed to elicit a reasonable explanation for conflict between DOT and VE in conformity with SSR 00-4p); see also Hackett v.Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005) (remanding pursuant to SSR 00-4p when the conflict was unresolved).

In the present case, the ALJ relied on the VE's testimony as to which jobs Plaintiff could perform. (Tr. 22). Specifically, the ALJ states "the vocational expert testified [Plaintiff's] past relevant work [was] that of a caseworker (DOT #195.107-010) - sedentary, skilled work [and] case worker adult (DOT #195.107-022) - sedentary skilled work ...." Id. In

the next paragraph, the ALJ notes "[b]ased on an exertional capacity for sedentary work, the undersigned finds that the claimant can return to her past relevant work as a caseworker and case worker, adult as it is generally performed in the national economy." Id. However, the ALJ's opinion makes no mention of the VE's testimony that all positions listed by the VE for Plaintiff are generally performed, in the national economy, at the light exertional level instead of the sedentary level, as specified by the DOT. (Tr. 404). Additionally, the ALJ's decision makes no reference to the VE's testimony explaining Plaintiff performed all of her past relevant work at a light exertional level.

The Commissioner argues the VE's statement, "[the exertional level] could vary from office to office" demonstrates there is no conflict between the DOT and the VE. (Doc. 27, 18) (emphasis added). However, this Court finds the argument unpersuasive. In context, the sentence indicates the VE merely made an aside that it was possible some jobs may be performed at the sedentary level, in conformity with the DOT standards. (Tr. 404). It is clear the VE opined Plaintiff's prior work required a light, not sedentary, exertional level.

Because the ALJ failed to "elicit a reasonable explanation for the apparent conflict before relying on the VE" and the VE's "[ability] to provide more specific information about jobs or occupations than the DOT", this Court finds the ALJ erred by failing to resolve the apparent conflict. SSR 00-4p. Accordingly, this matter must be remanded back to the ALJ for further proceedings to elicit a "reasonable explanation," on the record, regarding the conflict between the VE's testimony and the DOT standards.

**B. Whether the ALJ correctly dismissed Plaintiff's complaints of pain?**

Pain is a non-exertional impairment. Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir.

1995). The ALJ must consider all of a plaintiff's statements about her symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. Pain alone can be disabling, even when its existence is unsupported by objective evidence, Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A). When an ALJ determines the medical evidence does not confirm the plaintiff's allegations of pain the ALJ must make a finding as to a plaintiff's credibility. SSR 96-7p. Additionally, if an ALJ discredits a plaintiff's testimony on pain, the ALJ must "articulate specific reasons for questioning the [plaintiff's] credibility." Marbury, 957 F.2d at 839.

This Court will first address if the ALJ's analysis of Plaintiff's pain medication, as well as the ALJ's usage of Plaintiff's courtroom demeanor, were proper when she determined Plaintiff lacked credibility. First, Plaintiff argues the ALJ failed to correctly consider Plaintiff's medications. (Doc. 21, 15). Specifically, Plaintiff claims the ALJ erred by ignoring a prescription for Percocet 7.5/100. Id. However, this Court finds no evidence in the record to substantiate Plaintiff's claim, but has found ample evidence supporting the ALJ's finding. Other than statements made by Plaintiff's attorney, the record contains only a single reference to Percocet. (Tr. 326). Additionally, the reference to Percocet is not a prescription, reference to a prescription, refill order, or request for another medication by Plaintiff; rather, it is simply a reference within a list of prior medications. Id. Moreover, the record contains Plaintiff's testimony and references to Plaintiff's medications without any reference to Percocet. (Tr. 102, 285, 392). Accordingly, this Court finds the ALJ's determination as to Plaintiff's medication is supported by substantial evidence.

9

Second, Plaintiff contends the ALJ engaged in "sit and squirm" jurisprudence. (Doc. 21, 18). Specifically, Plaintiff argues the ALJ predetermined a set of symptoms she expected to see exhibited at the hearing and denied benefits when Plaintiff did not exhibit those symptoms. Id. This Court finds the argument unpersuasive. In support of the argument Plaintiff cites a single case, Freeman v. Schweiker, which held an ALJ may not predetermine a set of symptoms she expects to see a plaintiff exhibit at a hearing and deny benefits if the plaintiff does not exhibit the symptoms. Freeman v. Schweiker, 681 F.2d 727, 731. Plaintiff believes the ALJ erred when she stated, "the undersigned observed the claimant and she did not exhibit any problems with concentration, as she was able to actively engage in the hearing process." (Tr. 21).

While the quote indicates the ALJ utilized observations from the hearing in her final decision, the quote provides no indication the ALJ engaged in "sit and squirm" jurisprudence. An ALJ is not prohibited "from considering the claimant's appearance and demeanor during the hearing," but the ALJ is restricted from "[imposing her] observations in lieu of a consideration of the medical evidence." Norris v. Heckler 760 F.2d 1154, 1158 (11th Cir. 1985); see also Macia v. Bowen, 829 F.2d 1009, 1011 (11th Cir. 1987). The aforementioned quote does not indicate the ALJ substituted her observations in lieu of sound medical evidence. Specifically, the sentence preceding the ALJ's discussion of Plaintiff's demeanor lists findings of Plaintiff's concentration derived from sound medical evidence. (Tr. 21). Additionally, the ALJ linked the two sentences together with the adverb "Moreover" indicating the ALJ permissibly utilized Plaintiff's demeanor in furtherance of the medical evidence, not as a substitute. Id. Accordingly, this Court finds the ALJ did not engage in "sit and squirm" jurisprudence, nor did the ALJ err by utilizing Plaintiff's appearance at the hearing when

discrediting Plaintiff's allegations of pain.

When determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, 67 F.3d at 1560, quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).

In the present case, the ALJ found Plaintiff met step one of the Holt standard, but failed to qualify under steps two or three of the Holt analysis. Id. Specifically, the ALJ stated "the objective medical evidence does not confirm the severity of the alleged pain." Id. In conformity with SSR 96-7p, the ALJ made the required determination of Plaintiff's credibility and found Plaintiff's allegations "not fully credible." Id. The ALJ listed several reasons for discrediting Plaintiff's allegations, including the range of motion in Plaintiff's spine and both knees, strength of both Plaintiff's left and right knees, lack of narcotic based medications, and lack of side effects from Plaintiff's medications. Id. Additionally, the ALJ noted inconsistencies between Plaintiff's daily activities and her allegations of pain. Id.

When an ALJ adequately explains her reasons for discrediting testimony and those reasons are backed by substantial evidence, it is reversible error for a court to reject those reasons. See Dyer v. Barnhart, 395 F.3d 1206, 1212 (11th Cir. 2005); see also Wilson v. Barnhart, 284 F.3d 1219, 1226 (11th Cir.2002) (holding the ALJ's decision to discredit testimony was proper when adequate reasons were articulated). In Dyer, the ALJ's decision to discredit the claimant's testimony was upheld when the ALJ reviewed the claimant's daily

activities, medical symptoms, and dosages of medication. 395 F.3d at 1212. Accordingly, this Court finds the ALJ properly discredited Plaintiff's testimony by articulating adequate reasons including daily activities, medical symptoms, dosages of medication, and lack of medication induced side effects. Furthermore, this Court finds the ALJ properly applied the Holt pain standard by determining Plaintiff met step one of the Holt pain standard by establishing an underlying medical condition, but Plaintiff failed to establish the requisite medical evidence confirming the severity of the alleged pain or that the medical conditions are of such a severity that they can be reasonably expected to give rise to the alleged pain.

### C. **Whether the ALJ correctly assessed Plaintiff's RFC?**

Residual functional capacity ("RFC") is an assessment based on all relevant evidence of Plaintiff's remaining ability to do work despite her impairments. 20 C.F.R. §416.945(a); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of Plaintiff's condition(s) and the medical consequences thereof. Lewis, 125. F.3d at 1440. In evaluating a plaintiff's RFC, the ALJ is required to consider all of a plaintiff's impairments, including subjective symptoms such as pain.

While Plaintiff believes there is a conflict between SSR 96-9p, requiring Plaintiff to be able to work an 8 hour day, and the ALJ's determination that Plaintiff can sit for approximately 6 hours and can stand from no more than 2 hours in an 8 hour workday, (Doc. 21, 20), Plaintiff is mistaken. The ALJ's statement indicates Plaintiff could sit for "approximately" 6 hours. (Tr. 22). Logically, the ALJ's statement indicates the ALJ's belief that Plaintiff could sit for slightly more than 6 hours of an 8 hour workday. Next, the ALJ's statement that Plaintiff could stand for "no more" than 2 hours in an 8 hour workday indicates the ALJ's belief that Plaintiff could stand for up to 2 hours a day. Utilizing simple addition: 6

(or more) sitting + 2 hours standing = 8 hours, as required by SSR-96-9p.

In this case, the ALJ determined Plaintiff's RFC after a thorough review of Plaintiff's medical history.  (Tr. 21).  Before making a final determination on Plaintiff's RFC, the ALJ first evaluated the credibility of Plaintiff's claims of pain.  Id.  Next, the ALJ noted she provided substantial weight to the opinions of Dr. Findley, Plaintiff's treating physician.  Id.  Specifically, the ALJ mentions Dr. Findley's belief that Plaintiff could work.  Id.  The ALJ also gave substantial weight to Dr. Heekin, Plaintiff's orthopedic surgeon, and his determinations on Plaintiff's postural limitations, physical limitations, and ability to ambulate.  (Tr. 22).  Dr. Heekin set forth the following limitations, "she is unable to stand for more than 5 to 10 minutes per hour, cannot repeatedly climb, crawl or lift heavy objects greater than 20 lbs., walk long distances greater than one-quarter mile."  (Tr. 279).  Additionally, the ALJ gave weight to the state agency medical consultants' opinions that Plaintiff was capable of sedentary work with some postural limitations.  (Tr. 21-22).  After reviewing the medical record, the ALJ found Plaintiff retained the residual functional capacity to:

> occasionally lift and/or carry 10 pounds, frequently lift and/or carry less than 10 pounds, sit for approximately 6 hours of an 8-hour workday and walk and stand no more than 2 hours of an 8-hour workday.  This includes flexibility in the ability to sit and stand.  The claimant can occasionally climb, balance, stoop, kneel, crouch, and crawl.  The claimant retains the mental residual functional capacity for skilled work.

(Tr. 22).

As stated above, an RFC focuses on the doctor(s) evaluations of a plaintiff's condition(s) and the resulting medical consequences.  Lewis, 125 F.3d at 1440.  The ALJ's opinion demonstrates she included an evaluation of Plaintiff's complaints of pain, and correctly focused on the opinions of Plaintiff's doctors and their findings with respect to

13

Plaintiff's resulting limitations when determining Plaintiff's RFC.  Accordingly, this Court finds the ALJ's RFC is supported by substantial evidence, and the ALJ correctly determined Plaintiff's RFC based on a thorough review of the medical record and Plaintiff's testimony.

### D. **Whether the ALJ erred by failing to pose a complete hypothetical to the VE?**

Case law in this Circuit requires the ALJ to employ hypothetical questions which are accurate and supported by the record.  Pendley v. Heckler, 767 F.2d 1561 (11th Cir. 1985). Additionally, the hypothetical must include all limitations or restrictions of the particular claimant.  Id.  Where the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence.  Id.  (quoting Brenam v. Harris, 621 F.2d 688, 690 (5th Cir. 1980)).

First, Plaintiff argues the ALJ erred by failing to provide proper weight to side effects of Plaintiff's medications.  (Doc. 21, 21).  This Court finds this argument unpersuasive.  The ALJ posed the following question to the VE, "[a]nd if an individual would be impacted during the day by a medication effect, [she would] feel drowsy ... [would] that [be] an issue ...?"  The ALJ's question clearly indicates inclusion of possible side effects from Plaintiff's medication. (TR.  405).

Plaintiff next argues the ALJ erred by failing to include limitations posed by Plaintiff's Restless Leg Syndrom ("RLS") and urinary frequency.  (Doc 21, 21). While never specifically referencing RLS or urinary frequency, the ALJ and Plaintiff's counsel questioned the VE extensively on the availability of breaks within the workplace.  (Tr.  404-407).  Furthermore, the VE was asked if Plaintiff would be allowed to occasionally walk away from her work and if bathroom breaks would be permitted once every hour for up to five minutes.  (Tr.  407).  The

aforementioned questions indicate the ALJ recognized and acknowledged Plaintiff's limitations by posing questions to the VE which would accommodate those limitations within a workplace setting.

Finally, Plaintiff argues the ALJ erred by mischaracterizing Plaintiff's postural limitations to the VE (Doc 21, 21). Specifically, Plaintiff notes the ALJ's assertions to the VE that Plaintiff could "stoop, kneel, and crawl" were not supported by substantial evidence. Id. Again, this Court disagrees. Three of the four RFCs performed on Plaintiff, including the most recent, indicate Plaintiff could occasionally stoop, kneel, and crawl. (Tr. 166, 200, 290). One RFC, dated May 3, 2001, indicates Plaintiff could occasionally stoop and kneel, but never crawl. (Tr. 263). However, in a report dated May 10, 2001, Dr. Heekin, Plaintiff's orthopedic surgeon, stated Plaintiff could occasionally crawl. (Tr. 279). In summary, all five documents listed above indicate Plaintiff could occasionally stoop and kneel and only the May 3, 2001 RFC indicated Plaintiff could never crawl. (Tr. 166, 200, 279, 290). Accordingly, this Court finds the ALJ's assertions to the VE that Plaintiff could stoop, kneel, and crawl were supported by substantial evidence.

Having found no error by the ALJ among the issues raised by Plaintiff, this Court finds the ALJ posed a complete and accurate hypothetical to the VE encompassing "all limitations or restrictions of the [plaintiff]" as required by this Circuit.

### E. **Whether the Plaintiff qualifies for Listing 1.02 or 1.03?**

Any issue related to a disability claim may be considered by an ALJ on remand regardless of whether the issue was raised in previous administrative hearings. 20 C.F.R. § 404.983. Plaintiff argues, for the first time in this case, she meets the requirements for Listing 1.02 or 1.03. (Doc 21, 16). Because this case is being remanded back to the ALJ to

resolve the conflict between the VE and DOT, this Court feels the ALJ is best situated to address the issue of whether or not Plaintiff meets the requirements of Listing 1.02 or 1.03. Accordingly, this Court makes no decision at this time as to whether Plaintiff meets the requirements of Listing 1.02 or 1.03 and leaves the decision to the ALJ to address on remand.

### F. **Whether the ALJ erred by failing to consider Plaintiff's combined impairments?**

When a party "elaborates no arguments on the merits as to [an] issue ... the issue is deemed waived." Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1573 n. 6 (11th Cir 1989). Plaintiff argues the ALJ failed "to consider the impact of her combined impairments," however, Plaintiff failed to raise any "arguments on the merits" related to the issue. Therefore, this Court finds the issue of consideration of combined impairments waived by Plaintiff.

### V.   CONCLUSION

For the foregoing reasons, the Clerk of the Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. §405(g) **REVERSING** the Commissioner's decision and **REMANDING** this matter with instructions to 1) convene additional proceedings and elicit a reasonable explanation, on the record, regarding any conflict between the VE's testimony and the DOT before relying on any of the VE's testimony when determining whether Plaintiff qualifies for benefits, and 2) determine if Plaintiff qualifies for listing 1.02 or 1.03. Thereafter, the Clerk is directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this  15th  day of August, 2006.

*Monte C. Richardson*
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record